IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| JAMES THOMAS PAYNE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. CV04-477-S-BLW |
| | ) | |
| vs. | ) | **MEMORANDUM ORDER** |
| | ) | |
| DIRK KEMPTHORNE, et al. | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This case was reassigned to this Court to consider dismissal of Plaintiff's claims. This is the second review of the Complaint in this case. Chief Magistrate Judge Larry M. Boyle previously ordered the Idaho Defendants to lodge records from state court proceedings and inmate transfer and extradition documents so that the Court could determine whether Plaintiff has stated a cause of action. Plaintiff has also filed a Response to the Order (Docket No. 13). Having reviewed these items and the record in the case, and otherwise being fully informed, the Court enters the following Order.

**I.**

**REVIEW OF COMPLAINT AND SUPPLEMENTAL ITEMS**

**A.    Background**

The following timeline represents events relevant to Plaintiff's Petition:

March 2003          Plaintiff is extradited from Indiana to the Idaho Department of
                    Correction (hereinafter "IDOC").

**MEMORANDUM ORDER  1**

| | |
|---|---|
| May 23, 2003 | Judgment of Conviction entered in Plaintiff's Idaho case.  He is sentenced to a three-year indeterminate term. |
| June 18, 2003 | In response to Plaintiff's inquiries regarding his desire to be incarcerated in Puerto Rico rather than Idaho, the Commonwealth of Puerto Rico informs Plaintiff that there are no Puerto Rico outstanding warrants or outstanding charges against him, but that they intend to transfer him to Puerto Rico in the next few weeks in conjunction with an investigation of a homicide in which he admitted participation. |
| June 2003 | Puerto Rico initiates a request to the governor of Idaho for temporary custody of Plaintiff for investigative purposes. |
| June 27, 2003 | Plaintiff signs a request for final disposition of extradition request of Wyoming which serves to waive extradition to Wyoming.  Plaintiff later tries to withdraw his request, but he is not permitted to do so. |
| July 2003 | A grand jury in Baldwin County, Georgia, indicts Plaintiff on various felony charges arising from incidents in Georgia. |
| Aug. 25, 2003 | Georgia sends documents to IDOC re: Untried Indictments. |
| Sept. 5, 2003 | Georgia documents are received by IDOC. |
| Oct. 3, 2003 | IDOC provides Plaintiff with a Notice of Untried Indictment and Advisement of Rights (Interstate Agreement on Detainers Form I) regarding the Baldwin County, Georgia charges. |
| Oct. 21, 2003 | IDOC returns an unsigned request for disposition of detainer to Georgia, stating that inmate refused to sign and requesting that Georgia postpone its detainer until November. |
| Nov. 3, 2003 | Plaintiff files a habeas corpus petition in Clearwater County (hereinafter "CC HC action").   Relief requested: permanent and immediate transfer to Puerto Rico. |
| Nov. 13, 2003 | The Honorable Gregory M. Culet signs an Order Amending Judgment in Plaintiff's Clearwater County criminal case (hereinafter "CC criminal action"), "allowing" Plaintiff to serve his Idaho sentence in another jurisdiction, concurrent to a sentence in another |

**MEMORANDUM ORDER  2**

state.

| | |
|---|---|
| Nov. 13, 2003 | Plaintiff is temporarily transferred to Wyoming.  He is convicted of a misdemeanor and receives a 180-day sentence, to be served in Idaho concurrently with his Idaho sentence. |
| Nov. 24, 2003 | Plaintiff is returned to Idaho. |
| Dec. 3, 2003 | Plaintiff files an addendum to his CC HC action petition to notify the court of the Order Amending Judgment of November 13, 2003, issued in the CC criminal action. |
| Jan. 7, 2004 | In Ada County, Idaho, Plaintiff files a petition for habeas corpus (hereinafter "AC Transfer HC action").  Relief requested: that the court order IDOC to effect his permanent and immediate custody transferred to Puerto Rico, regardless of the status of the governor's executive dealings with Puerto Rico. |
| Jan. 21, 2004 | Plaintiff submits for filing a prisoner civil rights complaint that the Ada County Clerk of Court construes as a habeas corpus petition (hereinafter AC Parole HC Action"). It is a challenge to the Parole Commission's decision to pass him to his full-term release date rather than granting him parole.  The Ada County Court does not immediately file it. |
| Jan. 21, 2004 | IDOC provides a request for disposition of detainer to Georgia signed by Plaintiff. |
| Feb. 8, 2004 | Plaintiff files a request for temporary restraining order in his AC Transfer HC Action, asking to be transferred to Puerto Rico permanently, or to Georgia rather than to Puerto Rico temporarily. |
| Feb. 17, 2004 | Plaintiff leaves Idaho in custody of agents of Puerto Rico pursuant to an executive agreement between the governors of Puerto Rico and Idaho.  During the trip to Puerto Rico, Plaintiff escapes from the custody of the agents in Georgia. |
| Feb. 19, 2004 | The State of Idaho files a motion to dismiss the AC Transfer HC action on mootness grounds. |
| Feb. 26, 2004 | The Ada County Clerk files and dockets the AC Parole HC action |

**MEMORANDUM ORDER  3**

|               | that Plaintiff submitted on January 21. |
|---------------|------------------------------------------|
| March 5, 2004 | The State of Idaho files a motion to dismiss the AC Parole HC action on mootness grounds. |
| March 29, 2004 | In Ada County, the Honorable Daniel C. Hurlbutt, Jr., enters the following: (1) an Order finding Plaintiff's AC Transfer HC action moot and dismissing it; and (2) an Order finding Plaintiff's AC Parole HC action moot and dismissing it. |
| unknown date | Plaintiff is recaptured and returned to Idaho. |
| unknown date | Plaintiff is transferred to Georgia. |
| July 1, 2004 | Georgia sends notice to IDOC showing that Plaintiff was sentenced to 2 years incarceration in Georgia and was serving the sentence in Georgia. |
| April 2005 | Plaintiff reincarcerated in Idaho to finish his Idaho sentence following conclusion of Georgia sentence. |

**B.    Discussion**

1.    Puerto Rico Defendants

Plaintiff has sued the Puerto Rico Secretary of State, Puerto Rico Governor Sila M.

Calderon, Puerto Rico Director of Extraditions Rosa Alexandrino, Puerto Rico Attorneys

General Annabelle Rodriguez and Jose Santiago Martinez, Puerto Rico Extradition

Agents Hector Valentin de Jesus and Rafael Irizarry Rivera, Puerto Rico Homicide

Detective Nicolas Maldonado Vele, and Puerto Rico Police Department Superintendent

Augustin Cartegena Dias (collectively, "the Puerto Rico Defendants").  Plaintiff alleges

that the Puerto Rico Defendants all played a role in his extradition from Idaho to Puerto

Rico.

**MEMORANDUM ORDER  4**

In *Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001), a civil rights wrongful extradition case, the Ninth Circuit determined that a United States District Court in California could properly exercise personal jurisdiction over New York Defendants "who traveled to Los Angeles to retrieve [the extradited person] or were otherwise directly and significantly involved in [the] extradition." *Id.* at 694. The *Lee* holding suggests that this Court would have personal jurisdiction over those Puerto Rico Defendants who actually came to Idaho to retrieve Plaintiff and over those Puerto Rico Defendants who actively participated with Idaho officials in negotiating and effecting his transfer. Defendants are free to contest personal jurisdiction when or before they answer.

2.      Official Capacity Claims

The Eleventh Amendment generally prohibits a litigant from bringing suit against states, state agencies, and state officials acting in their official capacity. *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139 (1993); *Confederated Tribes and Banks of Yakama Indian Nations v. Locke*, 176 F.3d 467, 469 (9th Cir. 1999) (claims against governors in their official capacities are subject to Eleventh Amendment immunity).

There are three exceptions to Eleventh Amendment immunity. First, the Eleventh Amendment does not bar suit when the state unequivocally consents to be sued in federal court. Second, the Eleventh Amendment does not bar suit when a federal statute allows suits to be brought against states in federal court. Third, the Eleventh Amendment does

**MEMORANDUM ORDER  5**

not bar suit against a government official for prospective injunctive relief. *Ex parte Young*, 209 U.S. 123 (1908). Actions seeking prospective injunctive relief against officials in their official capacities are not treated as actions against the State. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 n.10 (1989).

None of these exceptions applies to permit Plaintiff to maintain a suit against government officials in their official capacity,[1] with the exception of Plaintiff's request for injunctive relief – requiring the Puerto Rico Defendants to return his box of legal materials. All other official capacity claims are subject to dismissal with prejudice as to the Idaho Defendants.

3. <u>Claims Regarding Idaho Officials' Failure to Follow a Court Order to Transfer Plaintiff to Puerto Rico to Serve his Sentence</u>

Plaintiff alleges that Idaho prison officials violated his civil rights by failing to follow a court order mandating that his sentence to be served in Puerto Rico. However, the order to which he refers does not *require* that he serve his sentence in Puerto Rico; it merely permits his sentence to be served in another jurisdiction. There is no factual basis for this claim. Plaintiff did not have a pending Puerto Rico conviction or sentence at the time he entered into the Idaho plea agreement or at any time thereafter. Plaintiff has no right to choose his place of confinement. *See Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir.

---

[1]While Plaintiff's claim that the courts are not enforcing his right to be returned to Puerto Rico on a permanent basis *can* be classified as an injunctive relief claim, the Court elsewhere in this Order finds that the claim has no factual or legal basis, and thus is subject to dismissal. See Section B(5) of this Order.

**MEMORANDUM ORDER  6**

1995); *Rizzo v. Dawson*, 778 F.2d 527 (9th Cir. 1985).  These claims are dismissed with prejudice as to all of the Idaho Defendants.

> 4.   First Amendment Access to Courts Claim

Plaintiff also asserts that Defendants conspired to have him removed from Idaho to another state or to Puerto Rico before his Idaho habeas corpus matter could be concluded. In his AC Transfer HC action, Plaintiff was requesting as a remedy in the habeas corpus action that he be transferred to Puerto Rico permanently.  In February 2004, Plaintiff was en route from Idaho to Puerto Rico pursuant to an executive agreement for temporary custody between Idaho and Puerto Rico.  However, while changing planes in Georgia, he escaped.

As a result of the escape, the State of Idaho filed a motion to dismiss in the AC Transfer HC action, as well as in the AC Parole HC action.  It does not appear that any cause of action arises from this set of circumstances.  First, Plaintiff had no legal right to be permanently transferred to Puerto Rico (there is no evidence whatsoever that Plaintiff had a pending Puerto Rico sentence to be served), and thus his action was meritless. Second, the habeas corpus actions were mooted by Plaintiff's escape.  The State and its representatives clearly had the right to seek dismissal of these actions after Plaintiff's escape, and the actions were properly dismissed.  Plaintiff's own actions proximately caused the dismissal of his case, not Defendants' actions in seeking dismissal on a new factual circumstance created by Plaintiff.   Therefore, Plaintiff has stated no access to

**MEMORANDUM ORDER  7**

courts cause of action because he can show neither actual injury nor causation. *Lewis v. Casey*, 518 U.S. 343, 360 (1996). This cause of action is dismissed with prejudice as to the Idaho Defendants.

Plaintiff also asserts that Defendant Attorney General Paul Panther violated his rights by failing to allow the IDOC Defendants to answer his grievances after Plaintiff instituted litigation. Plaintiff has no constitutional right to a prison grievance system. *See Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988), *cert. denied*, 488 U.S. 898 (1988). The attorney general had the right to demand that all correspondence be handled through him rather than through his clients once Plaintiff initiated a court action. This claim does not state a cause of action and is dismissed with prejudice.

5.     Sixth Amendment Right to Counsel Claims

Plaintiff asserts that his Sixth Amendment right to counsel during his transfer proceedings was violated. However, Plaintiff was not entitled to counsel for extradition proceedings. There is no constitutional right to counsel during extradition proceedings. *Anderson v. Alameida*, 397 F.3d 1175, 1180-81 (9th Cir. 2005). In addition, the Confrontation Clause does not apply in extradition proceedings. *Lopez-Smith v. Hood*, 951 F.Supp. 908, 913 (D. Ariz. 1996) (international extradition habeas corpus context).

Plaintiff has alleged no facts that would show he was entitled to counsel or that anyone interfered with his counsel. Therefore, his Complaint fails to state a claim upon which relief can be granted under the Sixth Amendment. This claim is dismissed with

**MEMORANDUM ORDER  8**

prejudice.

      6.      <u>Eighth Amendment Cruel and Unusual Punishment Clause</u>

Plaintiff has stated no set of circumstances which amounts to cruel and unusual punishment regarding any incident in which the Idaho Defendants were involved.  This claim is dismissed with prejudice as to the Idaho Defendants.

Plaintiff asserts that he was treated in a cruel and unusual manner by Puerto Rico agents en route to Puerto Rico.  He asserts that the agents verbally abused him, talked him into social drinking even though he did not want to, and made him carry his box of legal materials through the airport in an "extremely awkard" position because he was handcuffed to a leather waist chain.

    To state a claim under the Eighth Amendment, Plaintiff must show that he is incarcerated under conditions posing a substantial risk of serious harm.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  Verbal harassment, abuse, and threats are not sufficient to state a constitutional deprivation under § 1983.  *Oltarzewski v. Ruggiero*, 830 F.2d 136 (9th Cir. 1987); *see also Patton v. Przybylski*, 822 F.2d 697, 700 (7th Cir. 1987) (use of derogatory racial epithets does not violate Fourteenth Amendment); *see Shabazz v. Cole*, 69 F.Supp.2d 177, 198-201 (D.Mass. 1999) (citing authority to explain that racial slurs and verbal threats without more do not invoke constitutional protection).

None of the conditions of which Plaintiff complains posed a substantial risk of serious harm to Plaintiff.  Accordingly, these claims are subject to dismissal for failure to

**MEMORANDUM ORDER  9**

state a claim upon which relief can be granted.

      7.    <u>Ninth Amendment Claims</u>

Plaintiff also asserts a "Ninth Amendment right to not be denied or disparaged other rights retained by the People." This is not a cognizable cause of action. The Ninth Amendment is not the basis for a private cause of action under the civil rights statute. *Strandberg v. City of Helena*, 791 F.2d 744 (9th Cir. 1986). This claim is dismissed with prejudice.

      8.    <u>Plaintiff's Transfer to Puerto Rico</u>

In *Cuyler v. Adams*, 449 U.S. 433 (1981), the United States Supreme Court stated that "the only way to get a prisoner from one jurisdiction to another f*or purposes of trial on an indictment, information or complaint* is through resort to extradition or waiver thereof." *Id*. at 447 (emphasis added). The *Cuyler* Court also explained:

> [A] primary purpose of the [Detainer] Agreement is to protect prisoners against whom detainers are outstanding. As stated in the House and Senate Reports: "[A[ prisoner who has a detainer lodged against him is seriously disadvantaged by such action. He is in custody and therefore in no position to seek witnesses or to preserve his defense."

*Id*. at 449; *see also Draper v. Coombs*, 792 F.2d 915, 920 (9th Cir. 1986) ("although the statute was designed to allow speedy extradition, it also includes procedural safeguards that serve as 'a means of ascertaining whether the evidence is sufficient to detain and deliver the accused for trial in another state.'") (internal citation omitted). The *Cuyler* Court also noted that the prisoner's rehabilitative opportunities are often diminished when

**MEMORANDUM ORDER  10**

a detainer remains outstanding for a long period of time.  *Id.*

In Plaintiff's case, Plaintiff was a suspect in a homicide case, and Puerto Rico anticipated charging him after he was returned to Puerto Rico but had not charged him at the time of the request for temporary transfer.  Plaintiff asserts that Defendants violated his rights by an improper extradition.  Puerto Rico is not a party to the Interstate Act on Detainers (IAD), and thus the provisions of that law do not apply.  When a detainer is lodged, and a state or territory is not a party to the IAD, regular extradition proceedings in accordance with 18 U.S.C. § 3182 must be followed.  In such a case, normal extradition proceedings will ensue, "with the addition of an 'executive agreement' between the governor[s]" of the states involved.  *See* 15 Colo. Prac., Criminal Practice & Procedure § 23.65 (2nd ed).

The purposes of 18 U.S.C. § 3182, the extradition statute, are to facilitate "speedy extradition" between states and to provide "procedural safeguards that serve as 'a means of ascertaining whether the evidence is sufficient to detain and deliver the accused for trial in another state.'"  *Eldridge v. Block*, 832 F.2d 1132 (9th Cir. 1987).  It is unclear whether the transfer of Plaintiff involved a "detainer" and an actual "extradition."  On the one hand, the request for temporary custody can be construed as a request to deliver the accused for trial without probable cause, which would violate the extradition statute; on the other hand, it can be construed as a temporary prisoner transfer request for

**MEMORANDUM ORDER  11**

investigatory purposes,[2] which may be outside the extradition statute.[3]

The Court notes that the original draft of the executive agreement contemplated

Plaintiff's consent:

> WHEREAS, the under signed, as Governor of the Commonwealth of Puerto Rico is informed and believes that the said JAMES THOMAS PAYNE; AKA JAMES T. PAYNE; JAMES T. PAYNE WOODWARD; IDOC 70459, has agreed to be temporarily transferred to the Commonwealth of Puerto Rico for the purpose of aiding in the aforementioned investigations with full knowledge that, as a suspect in two unsolved homicides, he may be subject to criminal prosecution in the Commonwealth and has agreed to waive extradition to the Commonwealth of Puerto Rico for said purpose, and to waive extradition back to Idaho when said purpose has been accomplished[.]

State's Exhibit I.

In addition, Plaintiff was presented with the following document, drafted by Puerto

Rico officials, entitled "Consent to Travel to Another Jurisdiction and Waiver of

Extradition," that seems to indicate that either additional due process or consent was

required:

> I, James Thomas Payne. . . , am, at present, in the custody of the

---

[2]For example, it is unclear whether this agreement falls under 4 U.S.C. § 112, which provides: (a) The consent of Congress is hereby given to any two or more States to enter into agreements or compacts for cooperative effort and mutual assistance in the prevention of crime and in the enforcement of their respective criminal laws and policies, and to establish such agencies, joint or otherwise, as they may deem desirable for making effective such agreements and compacts. (b) For the purpose of this section, the term "States" means the several States and Alaska, Hawaii, the Commonwealth of Puerto Rico, the Virgin Islands, Guam, and the District of Columbia.

[3]The parties will be required to fully brief this issue if Defendants assert entitlement to qualified immunity.

**MEMORANDUM ORDER  12**

Idaho Correctional Institution at Orofino for the offense of Fraudulent Use of a Financial Transaction Card, Criminal Case No. 2002-21205. I have agreed to travel with the agents of the Commonwealth of Puerto Rico in the said Commonwealth in order to cooperate with law enforcement officers in that jurisdiction in the investigation of various homicide cases of which I have information and with full knowledge that, as a suspect in at least two of said homicides, I may be charged and prosecuted in the Commonwealth. I have not been threatened in any way or promised anything in return for my going to the Commonwealth of Puerto Rico, and I wish to do so of my own free will and accord. I have been advised by the Judge at the _____ Court, Idaho, concerning the law on extradition proceedings and my rights thereunder, as well as my right to be represented by counsel and my rights of habeas corpus and that I do not have to travel to the Commonwealth of Puerto Rico without the service of warrant of extradition and all other proceedings incidental to extradition. I further state that I will freely and voluntarily remain in the custody of agents of the Commonwealth of Puerto Rico and will voluntarily return to the State of Idaho with said agents without the necessity of any extradition proceedings being instituted by the State of Idaho.

*Id.*

When Plaintiff refused to give consent, the transfer took place without any proceedings incidental to an extradition. Plaintiff alleges that, prior to the transfer, he asked to have a hearing before an Idaho judge to determine the validity of the agreement, but Idaho officials refused.

The Ninth Circuit has determined that the procedural protections of § 3182 apply to suspects who have not yet been charged:

The absence of a proper Washington charge before the transfer of Draper from custody in Oregon to custody in Washington is what underlies the violation of § 3182. It is this failure to comply with the statute that serves as a basis for the claim; it cannot serve as a shield against it.

*Draper*, 792 F.2d at 921.

**MEMORANDUM ORDER  13**

Accordingly, Plaintiff has stated a cause of action for a violation of his due process rights regarding his transfer from Idaho to Puerto Rico, upon which he may proceed, except as to those Defendants who are absolutely immune from suit, as the Court decides below.

### 9.    Absolute Immunity - Governors

Several courts have determined that governors have absolute immunity from suit for claims arising from a governor's evaluation of extradition requests, because the determination is judicial in nature in that it requires a governor to make factual findings and legal conclusions prior to granting extradition.  *See White v. Armontrout*, 29 F.3d 357, 360 (8th Cir. 1994); *Cote v. Kontos*, 1989 WL 10854, *3 (D. Ill. 1989); *Smith v. Lamm*, 629 F.Supp. 1184, 1185 (D. Colo. 1986); *Arebaugh v. Dalton*, 600 F.Supp. 1345, 1350-51 (D. Va. 1985).  This Court agrees.  Accordingly, whether the request from Puerto Rico can be considered an "extradition request"or a request to make an interstate agreement for transfer of a prisoner-witness, Governor Calderon and Governor Kempthorne had to make extradition-type quasi-judicial determinations, such as factual findings and legal conclusions, prior to entering into the agreement.  Both are entitled to absolute immunity, and all claims against them are dismissed with prejudice.

### 10.    Absolute Immunity - Secretaries of State

Nothing in the record suggests that the Idaho Secretary of State took part in any of the actions asserted in the Complaint.  There is nothing in the record showing that the

**MEMORANDUM ORDER  14**

Secretary of State reviewed or approved the agreement.  The Idaho Secretary of State did not sign the executive agreement to transfer Plaintiff.  Accordingly, Plaintiff has failed to state a claim against the Idaho Secretary of State.  *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir.1979) (liability under section 1983 arises only upon a showing of personal participation by the defendant).  Even if the Secretary of State had been involved in the transfer proceedings, he or she would be entitled to absolute immunity, as explained above.  Similarly, the Puerto Rico Secretary of State is absolutely immune for actions take with respect to the executive agreement for transfer.  Therefore, these claims are dismissed with prejudice.

        11.    <u>Absolute Immunity - Attorneys General</u>

It is well settled that a prosecutor is entitled to absolute quasi-judicial immunity from liability for damages under 42 U.S.C. § 1983 when the alleged wrongful acts are "intimately associated with the judicial phase of the criminal process."  *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976); *Genzler v. Longanbach*, 384 F.3d 1092, 1097 (9th Cir. 2004).  The *Genzler* Court explained that "[a]bsolute immunity protects quasi-judicial conduct such as maliciously initiating a prosecution, using perjured testimony at trial, . . . suppressing material evidence a trial,  . . . participat[ing] in a probable cause hearing, and . . . preparing and filing charging documents."  384 F.3d at 1097 (internal citations omitted).  Absolute quasi-judicial immunity has been extended to government attorneys' actions in civil actions.  *See Flood v. Harrington*, 532 F.2d 1248 (9th Cir.

**MEMORANDUM ORDER  15**

1976); *Bly-Magee v. California*, 236 F.3d 1014 (9th Cir. 2001).

In *Bly-Magee*, the Ninth Circuit held that the plaintiff could not sue the California Attorney General or any deputy attorneys general for conduct related to their state litigation duties, including the defense of the plaintiff's prior and present lawsuits.  The *Bly-Magee* court distinguished official acts, for which the attorneys general would have immunity, from "any actions that are wholly unrelated to or outside of their official duties," which would not be covered by absolute immunity.  236 F.3d at 1018.   For example, the court concluded that any allegations that the attorney general "cover[ed] up . . . [other persons'] theft of federal funds to protect family, personal friends, and associates" would *not* be covered by absolute immunity  *Id*. at 1019.

Absolute immunity applies to protect prosecutors for their role in extradition proceedings.  *See Dababnah v. Keller-Burnside*, 208 F.3d 467, 471-72 (4th Cir. 2000).  In *Dababnah,* the Court catalogued a variety of jurisdictions so holding, and also noted that the plaintiff in that case failed to provide any case holdings to the contrary.  *Id*.

Under the absolute judicial immunity doctrine, a judicial officer's failure to follow statutory procedures is insufficient to strip him of immunity.  *Beard v. Udall*, 648 F.2d 1264 (9th Cir. 1981)*, overruled on other grounds by Ashelman v. Pope*, 793 F.2d 1072, 1075 (9th Cir. 1986).  Absolute judicial immunity applies "however erroneous the act may have been, and however injurious in its consequences it may have proved to the plaintiff."  *Ashelman*, 793 F.2d at 1075 (internal quotations omitted).

**MEMORANDUM ORDER  16**

Prosecutors who engage in investigatory activities are not entitled to absolute immunity, but may be entitled to qualified immunity. *See Burns v. Reed*, 500 U.S. 478 (1991), and *Buckley v. Fitzsimmons*, 509 U.S. 259 (1993). It is unclear whether Puerto Rico Attorneys General Annabelle Rodriguez and Jose Santiago Martinez were involved in investigatory activities or only in drafting the executive agreement transfer documents. Therefore, while these attorneys general may be able to show entitlement to absolute immunity when they respond to the Complaint, the current record is insufficient to decide that issue.

There are no allegations or any indication in the entire record that Paul Panther had any involvement in investigating the Puerto Rico homicide allegations against Plaintiff. Rather, his involvement is limited to working on (1) the executive agreement to have Plaintiff temporarily transferred to Puerto Rico and (2) the Idaho habeas corpus cases. There are no allegations that Paul Panther performed any act outside of his capacity as an attorney pursuing judicial or quasi-judicial action on behalf of the State of Idaho or that he performed any acts for personal gain. Based upon these facts, the Court concludes that Paul Panther is absolutely immune from suit regarding his decisions and actions taken in evaluation of the Puerto Rico-Idaho transfer agreement and in evaluation and pursuit of Plaintiff 's habeas corpus action, including the State's action to have it dismissed. Therefore, all claims against Paul Panther are dismissed with prejudice.

Likewise, the Puerto Rico Attorneys General are absolutely immune from suit for

**MEMORANDUM ORDER  17**

their participation in the negotiating and drafting of the executive agreement regarding Plaintiff's transfer from Idaho to Puerto Rico. They may assert entitlement to qualified immunity regarding any investigatory activities, or assert total absolute immunity on the grounds that they did not participate in any investigation.

### 12.   Claims against Defense Attorney

Plaintiff has failed to state a claim against Attorney Dayo Onanubosi, who represented him in the Idaho criminal action. A criminal defense attorney, whether appointed or retained, is not considered a "state actor" under § 1983. *Szijarto v. Legeman*, 466 F.2d 864 (9th Cir. 1972). Therefore, this claim is dismissed with prejudice.

### 13.   Claims under the Constitution of Puerto Rico

Plaintiff's claims under the Puerto Rico Constitution are construed as state claims under the Court's supplemental jurisdiction because a state law ground cannot be the foundation for a § 1983 action. *See Barry v. Fowler*, 902 F.2d 770 (9th Cir. 1990). The Court has found nothing to suggest that the Idaho Defendants would be subject to the Puerto Rico Constitutional provisions. Therefore, those claims are dismissed with prejudice as to the Idaho Defendants. In addition, the Court has found nothing to suggest that Puerto Rico has developed case law interpreting the Puerto Rico Constitution in a manner that would be applicable to Plaintiff's causes of actions. Therefore, the Court declines jurisdiction over Plaintiff's claims arising under the Puerto Rico Constitution.

**MEMORANDUM ORDER  18**

*See Smith v. Carrasco*, 334 F.Supp.2d 1094, 1099 (D. Ind. 2004) (a district court may decline to exercise supplemental jurisdiction if the claim raises a novel or complex issue of State law).  Plaintiff may bring these claims in a Puerto Rico Commonwealth court if he desires.

      14.    <u>Claims Regarding Georgia Detainers</u>

      Two Georgia detainers are at issue.  The Court will review each one separately. The first Georgia detainer was received by IDOC on September 5, 2003.  On October 3, 2003, IDOC presented it to Plaintiff.  On October 21, 2003, IDOC gave notice to Georgia officials that Plaintiff refused to sign a request for disposition of detainer.  No cause of action against the Idaho Defendants arises from this set of facts.  Where a defendant makes no demand for trial, any prejudice arising from the lengthy duration of unresolved charges is not due to the detainer, but due to defendant's failure to avail himself of the procedures for obtaining resolution for those charges.  *Pyzer v. Idaho*, 707 P.2d 487, 378 (Idaho Ct. App. 1985).

      As to the second detainer from Georgia, on or about January 21, 2004, Plaintiff executed a "Request for Disposition of Detainer" to Georgia, which acted as a waiver of extradition.  Plaintiff was sent to Georgia and convicted within 180 days,[4] and he remains incarcerated there.  His Idaho sentence ran concurrent to his two-year Georgia sentence.

---

[4]Under the Interstate Detainers Act, Idaho Code § 19-5001, *et seq*., Plaintiff's 180 days would have expired on about July 21, 2004.  IDOC received notice of the Georgia conviction on July 1, 2004, within the 180-day time period.

**MEMORANDUM ORDER  19**

No causes of action arise from this set of facts.

## II.

## PLAINTIFF'S MOTION FOR A RESTRAINING ORDER

Plaintiff recently filed a Motion for a Restraining Order.  It is unclear whether the subject matter of the Motion is tied to the subject matter of this action or the remaining Defendants.  Any Defendants who choose to answer the Complaint shall respond to the Motion at the time they file their answer or preanswer motion.

## III.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that the following claims are dismissed with prejudice: (1) all official capacity claims except the claim for return of Plaintiff's box of legal materials from Puerto Rico Defendants; (2) all claims against Dirk Kempthorne and Sila Calderon; (2) all claims against the Secretaries of State of Idaho and Puerto Rico; (3) all claims against Paul Panther; (4) all claims against Attorney Dayo Onanubosi; (5) all claims asserted under the Puerto Rico Constitution against the Idaho Defendants; (6) all Eighth Amendment claims against all Defendants; and (7) all Ninth Amendment claims against all Defendants.

IT IS FURTHER HEREBY ORDERED that the following claims are dismissed without prejudice: claims arising under the Puerto Rico Constitution.

**MEMORANDUM ORDER  20**

IT IS FURTHER HEREBY ORDERED that Plaintiff may proceed with the following claims (which may be subject to defenses): (1) due process claim for wrongful transfer from Idaho to Puerto Rico against Cindy McDonald, Phil Foster, Randy Blades, Annabelle Rodriguez, Jose Santiago Martinez, Rosa Alexandrino, Hector Valentin de Jesus, Rafael Irizarry Rivera, Nicolas Maldonado Vele, and Augustin Cartegena Dias; and (2) claim for injunctive relief for return of legal materials against Puerto Rico Defendants.

IT IS FURTHER HEREBY ORDERED that Plaintiff's Motion to Proceed in Forma Pauperis (Docket No. 1) is GRANTED.  A separate order requiring the prison to deduct the sum of $250.00 in increments from Plaintiff's prison trust account shall issue.

IT IS FURTHER HEREBY ORDERED that Plaintiff's Motion for Exemption from Filing Requirements (Docket No. 6) is MOOT, as Plaintiff has been returned to Idaho and judges' copies are no longer required.

IT IS FURTHER HEREBY ORDERED that Plaintiff's Motion for Relief and Order for Return of Legal Materials (Docket No. 7) is MOOT, as this issue will be addressed as part of Plaintiff's Complaint.

IT IS FURTHER HEREBY ORDERED that Plaintiff's Motion for Copy of Idaho Defendants' Response to Initial Review Order (Docket No. 14) is MOOT.  Defendants have already provided Plaintiff with a copy of the documents.

IT IS FURTHER HEREBY ORDERED that the Defendants listed below shall be allowed to waive service of summons by executing, or having their counsel execute, the

**MEMORANDUM ORDER  21**

Waiver of Service of Summons as provided by Fed. R. Civ. P. 4(d) and returning it to the

Court within thirty (30) days. If Defendants choose to return the Waiver of Service of

Summons, the answer or pre-answer motion shall be due in accordance with Rule

12(a)(1)(b).  Accordingly, the Clerk of Court shall forward a copy of the Complaint

(Docket No. 5), of the Motion for Restraining Order (Docket No. 18), a copy of this

Order, and a Waiver of Service of Summons to the following counsel:

>    **Timothy McNeese**, Attorney General for the State of Idaho, Idaho
>    Department of Corrections, 1299 North Orchard, Ste. 110, Boise, Idaho
>    83706, **on behalf of Defendants Cindy McDonald, Phil Foster, and
>    Randy Blades**;

>    **Puerto Rico Attorney General**, Apartado 9020192, San Juan,
>    Puerto Rico. 00902, **on behalf of Annabelle Rodriguez, Jose Santiago
>    Martinez, Rosa Alexandrino, Hector Valentin de Jesus, Rafael Irizarry
>    Rivera, Nicolas Maldonado Vele, and Augustin Cartegena Dias**.

Any Defendants who choose to answer the Complaint shall respond to the Motion for

Restraining Order (Docket No. 18) at the time they file their answer or preanswer motion.

Should any entity determine that the individuals for whom it was served are not, in

fact, its employees or former employees,  or that its attorney will not be appearing for

particular former employees, it should notify the Court's Pro Se Unit immediately in

writing (Pro Se Unit, U.S. District Court, 550 West Fort Street MSC 042, Boise, ID

83724) or via the CM/ECF system, with a copy to Plaintiff.

IT IS FURTHER HEREBY ORDERED that each party shall ensure that all

documents filed with the Court are simultaneously served upon the opposing party

**MEMORANDUM ORDER  22**

(through counsel if the party has counsel) by first-class mail or via the CM/ECF system, pursuant to Federal Rule of Civil Procedure 5.  Each party shall sign and attach a proper mailing certificate to each document filed with the court, showing the manner of service, date of service, address of service, and name of person upon whom service was made. The Court will not consider *ex parte* requests unless a motion may be heard *ex parte* according to the rules and the motion is clearly identified as requesting an *ex parte* order, pursuant to Local Rules of Civil Practice before the United States District Court for the District of Idaho 7.2.  ("*Ex parte*" means that a party has  provided a document to the court, but that the party did not provide a copy of the document to the other party to the litigation.)

IT IS FURTHER HEREBY ORDERED that all Court filings requesting relief or requesting that the Court make a ruling or take an action of any kind must be in the form of a pleading or motion, with an appropriate caption designating the name of the pleading or motion, served on all parties to the litigation, pursuant to Federal Rule of Civil Procedure 7, 10 and 11, and Local Rules of Civil Practice before the United States District Court for the District of Idaho 5.1 and 7.1.  The Court will not consider requests made in the form of letters.

IT IS FURTHER HEREBY ORDERED that Plaintiff shall notify the Court immediately if his address changes.  Failure to do so may be cause for dismissal of this case without further notice.

**MEMORANDUM ORDER  23**

DATED:  **May 19, 2005**



B. LYNN WINMILL
Chief Judge
United States District Court

**MEMORANDUM ORDER  24**